**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAMES O'LEARY, | |
| Plaintiff and Cross-Defendant, | Case No. 25-cv-03290 |
| v. | Judge Mary M. Rowland |
| DANIEL J. EDELMAN, INC. a Delaware Corporation, and RICHARD EDELMAN, Individually, | |
| Defendants and Cross-Plaintiffs. | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff and Cross-Defendant James O'Leary sued Defendants Daniel J. Edelman, Inc. ("Edelman") and Richard Edelman and (collectively, "Defendants"), alleging that Defendants refused to pay O'Leary certain incentive compensation that O'Leary was allegedly owed after resigning from Edelman. [1-1]. O'Leary brought claims for breach of contract and violations of the Illinois Wage Payment and Collection Act (the "IWPCA"). Edelman filed a counterclaim for breach of contract, alleging that O'Leary signed a waiver and release of claims upon his resignation and that O'Leary breached that release by filing this lawsuit. [16]. O'Leary moved to dismiss Edelman's counterclaim and voluntarily dismissed his own claims against Edelman [31]. Edelman seeks to maintain its breach of contract action against O'Leary. Before the Court now is O'Leary's motion to dismiss Edelman's counterclaim alleging breach of contract [29]. For the reasons herein, O'Leary's motion is granted. The Counterclaim is dismissed without prejudice.

1

## I. Background

The following factual allegations taken from the Edelman's complaint ("Counter Compl.") are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). The Court also references O'Leary's complaint ("Compl.") and the parties' waiver and release (the "Agreement"), which Edelman's counterclaim incorporates by reference *See Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022 ("[A] court may consider documents that are (1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim.").

O'Leary worked as an executive for Defendants, and in October 2014, Edelman accepted O'Leary into its Executive Long-Term Compensation Plan ("LTIP"). Counter Compl. ¶¶ 8-9. Under the LTIP, executives received certain "Units," which vested over time. Counter Compl. ¶ 11. When an executive like O'Leary left Defendants' employ, a plan administrator determined whether the executive's departure was approved or unapproved. Counter Compl. ¶ 23. If unapproved, the executive would forfeit all Units. Counter Compl. ¶ 34.

Separate from Units, Defendants also offered O'Leary the opportunity to own shares of the company. Counter Compl. ¶ 14. Defendants can repurchase an executive's shares following their departure from the company. Counter Compl. ¶ 15.

O'Leary resigned effective January 13, 2023, and Defendants approved his resignation that morning. Compl. ¶ 3; Counter Compl. ¶ 26. After Defendants learned

that O'Leary was leaving to work for a competitor, they redesignated his departure as unapproved. Counter Compl. ¶ 26.

On June 21, 2023, O'Leary signed the Agreement, under which Defendants agreed to pay him for his shares (but not his Units). Counter Compl. ¶¶ 29, 34. The Agreement, which described O'Leary as "Shareholder," further provided:

> Shareholder waives, releases, and forever discharges Daniel J. Edelman Holdings, Inc., and its parents, subsidiaries…shareholders, officers, directors…from any and all rights, causes of action, claims or demands, whether express or implied…which Shareholder may have against the Company and/or Company releases, **arising up to the date of this Agreement out of Shareholder's ownership of Shares**, the Company's repurchase of the Shares, any agreements between the Parties related to the Shares…Shareholder acknowledges that the Company (including all Company Releasees) has not: (a) breached any express or implied contract with Shareholder; or (b) otherwise acted unlawfully toward Shareholder…Shareholder further understands **that this Waiver and Release Agreement includes a release of all known and unknown claims to date**.

Counter Compl. ¶ 30 (emphasis added).

In addition, Paragraph 5 of the Agreement provides that:

> Shareholder agrees that, in the event that any claim, suit, or action is commenced by Shareholder . . . arising out of any charge, claim, or cause of action which, by this Agreement, Shareholder is releasing, this Agreement shall constitute a complete defense to any such claims . . . In the event that Shareholder breaches this agreement by suing the Company . . . for any released claim, Shareholder shall pay the Company's . . . reasonable attorneys' fees and other costs incurred by them as a result of Shareholder's . . . suit.

[16-1] ¶ 5. Edelman alleges that "O'Leary understood the [Agreement] contained a general release of all claims." Counter Compl. ¶ 33.

On February 25, 2025, O'Leary sued Edelman in state court, alleging Edelman violated the terms of the LTIP when Edelman redesignated O'Leary's departure as

unapproved. *See* [1-1] ¶¶ 38-51. Edelman removed that action to federal court. [1]. Edelman subsequently filed the counterclaim that is the subject of this opinion, alleging that O'Leary's lawsuit violated the terms of the Agreement. [16].

Shortly thereafter, O'Leary notified the Court of his plans to voluntarily dismiss his suit so that he could refile his lawsuit in Delaware state court. *See* [24]. O'Leary dismissed his claims on August 14, 2025. [31].

## II. Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to

be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

These pleading standards apply equally to counterclaims. *See Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001).

## III.   Analysis

O'Leary argues that Edelman's counterclaim should be dismissed because  (1) to the extent the Agreement is relevant to O'Leary's now dismissed claims, the Agreement could function only as an affirmative defense, not as an independent source for an action for breach of contract, (2) Edelman has not adequately alleged that O'Leary's breach caused any damages, and (3) O'Leary's complaint was not a breach of the Agreement.

### I.   Whether the Agreement is a release or a covenant not to sue is ambiguous.

Under Illinois law, "[r]elease is an affirmative defense [that] must be raised in a party's responsive pleading." *Caudill Seed & Warehouse Co. v. Rose*, 868 F.3d 558, 560 (7th Cir. 2017). Illinois law distinguishes between a *release of claim* on the one hand, which only gives a Defendant an affirmative defense, and a *covenant not to sue*

5

on the other, which when violated can form the basis of a breach of contract claim. *See Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 797 (7th Cir. 2005) (applying Illinois law); *see also Pate v. City of Sesser*, 393 N.E.2d 1146, 1149 (Ill. App. Ct. 1979) ("A release extinguishes a cause of action whereas a covenant not to sue affects only the right to bring suit and not the cause of action itself.").

O'Leary argues that the Agreement functions only as a release. In support, O'Leary relies primarily on *Isbell*, where an employee signed an agreement that "release[d], waive[d], and forever discharge[d] Allstate ... from any and all liability, actions, charges, causes of action, demands, damages, entitlements or claims for relief or remuneration of any kind whatsoever, ... including ... any claim for age or other types of discrimination prohibited under [the ADA]." 418 F.3d at 797. The employee subsequently sued under the ADA, and the district court granted Allstate summary judgment on its breach of contract claim premised on the release agreement. *Id*. The Seventh Circuit reversed, explaining that the agreement did "not amount to a covenant not to sue, but rather is a release from liability for any potential past claims." *Id*. That agreement gave "Allstate a defense that prevent[ed] [the plaintiff] from winning," the Seventh Circuit reasoned, but it did "not contain plain language that amounts to an agreement not to sue." *Id*. Accordingly, the agreement "d[id] not result in breach upon the filing of a [released claim]." *Id*.

O'Leary argues that the same follows here. Indeed, the plain language of the agreement indicates that the parties intended it only as a release from liability for past claims. *See* [16-1] at 2 (explaining that the Agreement would waive O'Leary's

claims "arising up to the date of this Agreement."); *id*. at 3 (the Agreement "does not constitute a waiver of any rights or claims that may arise after" the Agreement). And Paragraph 5 of the Agreement provides that *if* O'Leary brings a released claim that, the "Agreement shall constitute a complete defense." *Id* ¶ 5.

But that is not all Paragraph 5 says. It further provides that "[i]n the event [O'Leary] *breaches* this Agreement by suing [Defendants] . . . for any released claim, [O'Leary] *shall pay* [Defendants'] reasonable attorneys' fees and other costs incurred by them as a result of [the claim]." [16-1] ¶ 5 (emphasis added). While not an *explicit* covenant not to sue, this language could constitute an *implicit* promise not to sue. Under this reading, if O'Leary "breaches" the Agreement by suing for a released claim, the Agreement provides Defendants with the affirmative right to seek reasonable attorneys' fees. O'Leary's reading is that because the promise resides in a contract that provides Defendants with an affirmative defense, Defendants cannot seek the affirmative relief that the Agreement entitles them to. But accepting this argument would deny Defendants the full benefit of their bargain, namely fees.[1]

At a minimum, the exact remedy that Paragraph 5 affords Defendants in the event O'Leary files a released claim is ambiguous. "A contract is ambiguous if its terms are

---

[1] The case law on this issue is not as straightforward as either party presents it. While some courts have indicated that express, explicit language promising not to sue is required to find a covenant, *see Isaacs v. Caterpillar, Inc.,* 702 F. Supp. 711, 713 (C.D. Ill. 1988), others have suggested that a release which provides for damages in the event a released claim is brought could function as a covenant not to sue. *E.g.*, *Davis v. Ret. Plan of Philbro Animal Health Corp.*, 845 F. Supp. 2d 915, 922 (S.D. Ill. 2012) (dismissing counterclaim based on release, noting, among other things, that a covenant not to sue "would provide for damages"); *Bukuras v. Mueller Group, LLC*, 592 F.3d 255, 266–267 (1st Cir. 2010) (applying Massachusetts law and finding that a release was *not* a covenant not to sue because "the Agreement [the counter-defendant] signed contained no fee-shifting provision that would have entitled [counter-plaintiff] to recover its costs or fees in the event of a breach.").

7

indefinite or have a double meaning." *Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 379 (7th Cir. 2009). Under one reading of Paragraph 5, Defendants have only an affirmative defense to a suit; under another, Defendants have a right to seek affirmative relief. It may be that this ambiguity can be resolved through extrinsic evidence indicating that the parties meant only to sign a release. Either way, this ambiguity cannot be resolved at the pleadings stage. *See PMC Cas. Corp. v. Virginia Sur. Co.*, No. 24 C 7795, 2025 WL 1685293, at *4 (N.D. Ill. June 16, 2025) (citing *Echo, Inc. v. Whitson Co., Inc.*, 121 F.3d 1099, 1104 (7th Cir. 1997) (ambiguities in contract create question of fact that cannot be resolved on a motion to dismiss). Accordingly, the Court cannot find, as O'Leary asserts, that the Agreement provides *only* an affirmative defense that cannot form the basis of a breach of contract claim.

## II. Whether O'Leary's contract claim was released is likewise ambiguous.

O'Leary next argues that even if Edelman can bring a breach of contract based on the Agreement, Edelman has failed to allege that O'Leary breached the Agreement by filing this lawsuit. O'Leary's complaint contained two claims: a breach of contract claim and an IWPCA claim. The parties agree that the IWPCA claim was not (and legally could not be) released under the Agreement. [36] at 10. They dispute whether O'Leary's contract claim, premised on Defendants allegedly denying him Units under the LTIP, was released by the Agreement.

Paragraph 2 of the Agreement specifically provides that by signing the Agreement, O'Leary released all claims "arising up to the date of this Agreement out of Shareholder's ownership of Shares[.]" [16-1] ¶ 2. If that were all the Agreement

said, it would be clear that O'Leary's lawsuit — which arose out the LTIP Units, not shares — was not released by the Agreement.

But Paragraph 12 of the Agreement separately provides that the Agreement "includes a release of *all known and unknown claims* to date." [16-1] ¶ 12. Edelman alleges that O'Leary knew about his claim arising from LTIP Units at the time the Agreement was executed. *See* [36] at 11. If true, Paragraph 12's general language would release O'Leary's LTIP breach of contract claim.

O'Leary responds that there is no ambiguity, and that the specific release language in Paragraph 2 controls. *See* [30] at 10-11. It is a general rule in contract interpretation that "specific provisions trump general ones." *Aircraft Owners & Pilots Ass'n v. Hinson*, 102 F.3d 1421, 1425 (7th Cir. 1996). But the Illinois Supreme Court has explained that where a contract contains a specific release and a general release, *and* where both parties were aware of an additional claim at the time the release is signed, the general release language should be given effect. *Farm Credit Bank of St. Louis v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991).[2] But contrary to this general principle, in *Whitlock*, the Illinois Supreme Court considered a release that, like here, contained plain language indicating the parties meant only to release specific claims. *Id*. The Court held that this specific language was rendered ambiguous by other

---

[2] O'Leary attempts to distinguish *Whitlock* because it (1) was decided on summary judgment, (2) did not involve a counterclaim, and (3) involved a contract that was ambiguous. *See* [37] at 10-11. But (a) the difference in procedural posture does not affect the rule that *Whitlock* set forth, (b) it is not clear why the absence of a counterclaim would affect the Illinois Supreme Court's contract interpretation, and (c) like in *Whitlock*, the presence of specific and general release language in the Agreement renders the nature of the release ambiguous. Further, nearly all the cases that O'Leary cites where an Illinois court held that a specific release governed over a more general release predate the Illinois Supreme Court's decision in *Whitlock*. *See* [30] at 10-11.

language in the agreement that suggested a broader release. *Id.* The same follows here. Because of the ambiguity between the specific and general release language, the Court cannot say at the pleadings stage whether the general release language in Paragraph 12 governs O'Leary's LTIP claim.[3]

### III. Edelman has nonetheless failed to adequately allege damages.

"Damages are an essential element of a breach of contract action, for without damages there can be no recovery." *Wexler v. Chubb Nat'l Ins. Co.*, No. 21-CV-2543, 2025 WL 1918828, at *3 (N.D. Ill. July 11, 2025) (citing *Walker v. Ridgeview Const. Co., Inc.*, 736 N.E.2d 1184, 1187 (Ill. App. Ct. 2000)). O'Leary argues that even if he *did* breach the Agreement, Edelman has failed to allege it was damaged by that breach. The Court agrees.

Edelman's sole allegation related to damages is that it "was harmed by O'Leary's breach, including but not limited to being required to defend" against O'Leary's lawsuit. Counter Compl. ¶ 50. As relief, Edelman requests that it be awarded the damages "it has suffered, in an amount to be determined, including but not limited to the reasonable attorneys' fees and costs incurred in defending" against O'Leary's lawsuit. Counter Compl. at 7.

But the Agreement only provides for attorneys' fees that Defendants incur because of O'Leary bringing a *released* claim. [16-1] ¶ 5. As noted, O'Leary brought one allegedly released claim for breach of contract and an IWPCA claim, which the parties

---

[3] The Court notes, however, that at least some Illinois Appellate courts have continued to hold that a specific release controls over a more general release even after the Illinois Supreme Court's decision in *Whitlock. See Countryman v. Indus. Comm'n*, 686 N.E.2d 61, 65 (Ill. App. Ct. 1997)

10

agree is *not* released. Defendants moved to dismiss the *non*-released IWPCA claim. Edelman has not alleged facts showing that it litigated (i.e., suffered damages) because of O'Leary's *released* claim. Defendants have not even answered the Complaint in this Court.

Edelman argues that because O'Leary brought at least one released claim, it can recover its attorneys' fees related to defending *all* of O'Leary's claims. [36] at 12. In support, Edelman relies on *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, where a district court noted that in the context of a fee-shifting statute, a party could recover for fees under multiple claims if (1) the party "substantially prevailed" on the statutory claim that came with fee shifting and (2) the other claims arose under the same common core set of facts. No. 94 C 50392, 1999 WL 669226, at *2 (N.D. Ill. Aug. 27, 1999).

Here, any potential award of fees comes not from a statute but from the plain language of the Agreement. The Agreement provides that Edelman can recover for "reasonable fees" that are "incurred as a result of" "any released claim." [16-1] ¶ 5. To the extent that O'Leary breached the Agreement, he did so only by filing a released contract claim. O'Leary's IWPCA claim was not a breach of the Agreement, so any costs Edelman incurred defending that claim are irrelevant to Edelman's breach claim. Because Edelman has not alleged that it incurred costs in defending O'Leary's allegedly released contract claim, Edelman has failed to state a claim for breach of contract.

## IV.    Conclusion

11

For the stated reasons, O'Leary's motion to dismiss [29] is granted.

E N T E R:

Dated: March 20, 2026

_____

12